UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MARILYN BOYKINS,                                    <u>MEMORANDUM & ORDER</u>
                                                    10-CV-3788 (JS)(ARL)
                        Plaintiff,


            -against-


COMMUNITY DEVELOPMENT CORPORATION
OF LONG ISLAND, CORINNE HAMMONS,
CONNIE BRUNO, KELLY KLEO,


                        Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:      Jeffrey Seigel, Esq.
                    Victor J. Ambrose, Esq.
                    Nassau Suffolk Law Services Committee, Inc.
                    1757 Veterans Memorial Highway, Suite 50
                    Islandia, NY 11749
For Defendants:

CDC                 Domenique Camacho Moran, Esq.
Corinne Hammons     Michael Alan-Herman Schoenberg, Esq.
Connie Bruno        Steven N. Davi, Esq.
                    Farrell Fritz, P.C.
                    1320 Reckson Plaza
                    Uniondale, NY 11556-1320


Kelly Kleo          No appearances.


SEYBERT, District Judge

            Pending before the Court is Defendants'[1] motion to

dismiss.  For the following reasons, that motion is GRANTED IN

PART AND DENIED IN PART.

---

[1] For this motion's purposes, "Defendants" excludes Kelly Kleo.
The Amended Complaint names Ms. Kleo as a Defendant.  But Ms.
Kleo has not appeared in this litigation and, based on the
docket sheet, there is no indication that Ms. Boykins ever

Plaintiff Marilyn Boykins received public housing
assistance through the Section 8 Housing Choice Voucher Program
("Section 8").

On September 17, 2009, Defendant Corinne Hammons, on
behalf of Defendant Community Development Corporation of Long
Island ("CDC"), sent Ms. Boykins a termination notice, informing
her that it intended to terminate her Section 8 subsidy because
she "had an unauthorized individual in your unit." (Am. Compl.
¶ 20.) The notice also quoted applicable regulations stating,
among other things, that a participant "must request PHA
approval to add any other family member as an occupant of the
unit." (Id. Ex. D.) The notice then informed Ms. Boykins that
she had a right to an informal hearing, could bring legal
counsel at her own expense, and could examine the documentation
against her before the hearing, but must, in turn, "provide CDC
copies of any documents or evidence you plan to use at the
hearing, prior to the hearing." (Id.)

The informal hearing was held on October 26, 2009.
(Id. ¶ 21.) On November 11, 2009, hearing officer Kelly Kleo

---

served her with the Summons and Complaint, much less a copy of
the Amended Complaint.

sent Ms. Boykins her decision upholding the termination. (<u>Id.</u> ¶ 24.)

This action followed. In it, Ms. Boykins alleges that the CDC's termination procedures violated her due process rights, for a variety of reasons.

DISCUSSION

I.  <u>Standards of Review</u>

    A.  <u>Legal Standard Under Rule 12(b)(6)</u>

In deciding F<small>ED</small>. R. C<small>IV</small>. P. 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles," <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009). First, although the Court accepts all factual allegations as true, and draws all reasonable inferences in the plaintiff's favor, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Harris</u>, 572 F.3d at 72 (quoting <u>Ashcroft</u>); <u>Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC</u>, 595 F.3d 86, 91 (2d Cir. 2010). Second, only complaints that state a "plausible claim for relief" can survive Rule 12(b)(6). <u>Id.</u> Determining whether a complaint does so is "a context specific task that requires

3

the reviewing court to draw on its judicial experience and common sense." Id.

B.   Due Process Requirements Under Goldberg

In Goldberg v. Kelly, the Supreme Court held that due process requires a defendant to meet certain procedural safeguards before terminating a recipient's public housing assistance. 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970); see also Falkowski v. North Folk Housing Alliance, Inc., 08-CV-2550, 2009 WL 3174029 (E.D.N.Y. Sep. 30, 2009). Specifically, due process requires: (1) timely and adequate notice, including the reasons for the proposed termination; (2) an opportunity to be heard at a pre-termination hearing, including the right to present evidence and confront and cross examine witnesses; (3) a right to be represented by counsel at the hearing; (4) a written decision, including the reasons for the determination and the evidence on which the decision maker relied; and (5) an impartial decision maker. See Falkowski, 2009 WL 3174029 at *2 (citing Goldberg, 397 U.S. at 266-71).

II.  Ms. Boykins' Claims

Ms. Boykins argues that Defendants violated her due process rights because: (i) the pre-termination notice she received did not sufficiently inform her of the grounds for the proposed termination; (ii) Ms. Kleo failed to sufficiently

explain the reasons for her decision; (iii) Ms. Kleo improperly relied on "documents and evidence of which plaintiff was unaware and had no opportunity to rebut"; (iv) Ms. Kleo improperly based her decision on a non-existent regulation "relating to the use of the subsidized premises for receipt of mail by a non-resident,"; and (v) Ms. Kleo's decision was "arbitrary and capricious," because "a lack of adequate evidence" supported terminating Ms. Boykins' benefits. The Court considers these claims as alleging three distinct due process theories: (1) the initial termination notice was not sufficiently specific; (2) the post-hearing decision was not sufficiently specific; and (3) Defendants did not prove the alleged violation by a preponderance of the evidence.

A.    <u>Failure to Provide Sufficiently Specific Notice</u>

Ms. Boykins first argues that the CDC and Ms. Hammons violated her due process rights because the pre-termination notice they sent on September 19, 2009 did not sufficiently describe her alleged violation. This notice alleged that Ms. Boykins "had an unauthorized individual in your unit," and quoted regulations concerning the need for "PHA approval to add any other family member as an occupant of the unit." (Am. Compl. ¶ 20 & Ex. D.) Ms. Boykins contends that the notice was not specific enough because it did not identify "the person

involved," "the time period at issue," and whether the "'unauthorized person' was living in the subsidized unit." (Am. Compl. ¶ 50.) Defendants argue that the notice adequately informed her of the charges presented.

A pre-termination notice must "adequately inform[]" a recipient "of the nature of the evidence against him so that [s]he can effectively rebut that evidence." Escalera v. New York City Housing Authority, 425 F.2d 853, 862 (2d Cir. 1970). "[O]ne-sentence summary notices are inadequate for this purpose." Id. Likewise, "[a] notice which merely parrot[s] the broad language of the regulations is insufficient." Edgecomb v. Housing Authority of Town of Vernon, 824 F. Supp. 312, 315 (D. Conn. 1993) (internal citations and quotations omitted). But, as far as this Court can tell, neither the Supreme Court nor the Second Circuit has ever articulated a specific minimum standard for what a notice must contain.

Here, the notice was more than just a one-sentence summary. And it did more than "merely parrot[] the broad language of the regulations." Id. But the notice was much vaguer than the kinds of notices that other Second Circuit district courts have found compliant, and more resembles notices held non-compliant. The notice did not identify the "unauthorized individual," did not specify whether the

individual allegedly resided "in [Ms. Boykins'] unit," or was
just present there, and did not indicate when the alleged
violation took place.  Compare Edgecomb, 824 F. Supp. at 315
(notice insufficient because it "[did] not indicate which family
member committed proscribed acts, what the nature of the alleged
crime was, or when the relevant acts were committed") with
Lawrence v. Town of Brookhaven Dept. of Housing, Community
Development & Intergovernmental Affairs, 07-CV-2243, 2007 WL
4591845, at *15 (E.D.N.Y. 2007) (notice sufficient because it
"stated the particular crime," "the person who allegedly
committed it," "the date of the charge," and "the county in
which it occurred").

        This is a relatively close call.  But, based on the
Amended Complaint, and documents subject to judicial notice, the
Court finds that Ms. Boykins has stated a plausible claim that
the notice did not satisfy due process.

        To begin with, it is debatable, at best, whether the
notice sufficiently informed Ms. Boykins that the allegations
concerned an "unauthorized individual" living in her unit, or
simply visiting it.  (Am. Compl. Ex. D.)  The notice did quote
regulations concerning the need to receive approval before
"add[ing] any other family member as an occupant of the unit."
(Id.)  But the notice also confusingly alleged only that an

"unauthorized individual" was "in" the unit, not that the person
lived there.  Id.  In so doing, the notice suggested (wrongly)
that Ms. Boykins might lose her benefits because she permitted
an unauthorized person to visit her apartment.

But even if, arguably, the notice adequately informed
Ms. Boykins about the kind of the alleged violation (i.e., a
"family member" as an unauthorized "occupant"), it still did not
inform her "of the nature of the evidence against [her] so that
[s]he can effectively rebut that evidence."  Escalera, 425 F.2d
at 862.  Indeed, the notice did not describe the "evidence
against [her]" at all.  Nor, for that matter, did the notice
provide any factual detail regarding the violation alleged.  In
this regard, the Court notes that Ms. Boykins has alleged that
her "kids come to visit [her] all the time because [she] is
sick." Def. Ex. B at 7.[2]  So, even if Ms. Boykins, arguably,
should have understood the notice as alleging that a family
member improperly lived with her, the notice left her guessing
as to which of her children supposedly resided with her, and the
period of time when they so resided--making it substantially
more difficult and burdensome for Ms. Boykins build her defense

---

[2] The Amended Complaint incorporates the pre-termination hearing
transcript by reference.  (Am. Compl. ¶¶ 21-23.)  Consequently,
the Court construes Ms. Boykins' testimony during the hearing as
factual allegations relevant to her claim.

(i.e., which children to call to testify, what documents to present demonstrating each child's true residence, etc.). It follows then that Ms. Boykins has properly alleged that the notice was not "sufficiently specific . . . to enable [her] to prepare rebuttal evidence to introduce at his hearing appearance." Edgecomb, 824 F. Supp. at 315 (quoting Billington v. Underwood, 613 F.2d 91, 94 (5th Cir. 1980)). Thus, her improper notice claim (styled as the "First Claim For Relief") survives Defendants' motion to dismiss.

   B.   Vague Decision Claim

        Next, Ms. Boykins argues that the CDC violated her due process rights when Ms. Kleo issued "a decision totally devoid of any factual basis for the determination." (Am. Compl. ¶ 55.) Ms. Boykins contends that Ms. Kleo improperly failed to state the evidence she relied upon, or the HUD regulation that Ms. Boykins supposedly violated. Defendants disagree.

        Under Goldberg, an agency must provide a public welfare recipient with a written decision that: (1) states the "reasons" for the determination; and (2) indicates the evidence relied upon. 397 U.S. at 271. But this written decision "need not amount to a full opinion or even formal findings of fact and conclusions of law." Id. Indeed, at least in some cases, a "cursory" decision can satisfy due process, as long as the

decision "indicates on what grounds" it relied upon, "sufficient to allow a reviewing court to determine whether the [decision-maker] had relied solely on the evidence in the record." <u>Moore v. Ross</u>, 687 F.2d 604, 610 (2d Cir. 1982).[3]

Here, Ms. Kleo's decision set forth she "carefully reviewed the minutes of the above referenced [hearing] . . . [and took] all statements and documentation under consideration before rendering this decision." (Am. Compl. Ex. F.) Ms. Kleo then wrote that Defendant CDC "did demonstrate by a preponderance of the evidence that Ms. Boykins did in fact violate Section 8 rules and regulations under 24 CFR 982.551 (Obligations of a participant) and CFR 982.552 (Denial or termination of assistance to family." (<u>Id.</u>) Consequently, Ms. Kleo set forth that she "uph[e]ld CDC's decision to terminate rental assistance." (<u>Id.</u>)

Given Ms. Kleo's written decision, the Court finds that Ms. Boykins cannot state a claim for a violation of

---

[3] In opposing Defendants' motion, Ms. Boykins does not just rely on <u>Goldberg</u>. Instead, she asks the Court to apply federal regulatory standards concerning pre-termination procedures. <u>See</u> (Pl. Opp. Br. at 9) (citing 49 Fed. Reg. 12215, 12230 (March 29, 1984).) The Court does not reach this argument. Ms. Boykins' specificity of the decision claim survives based on <u>Goldberg</u>'s standards alone. And it is, at best, an open question whether the applicable regulations create a private right of action, or should be interpreted as defining what due process requires. <u>See</u> <u>generally</u> Docket No. 29-2 at 10-12.

10

Goldberg's second requirement: that the decision describes the evidence it relied upon. See 397 U.S. at 271. Albeit in a cursory fashion, Ms. Kleo did indicate the evidence she considered--writing that she relied upon "all statements and documentation" in the record. And "[t]here is no constitutional infirmity per se in referring to the record, rather than repeating evidence in the record." Moore v. Ross, 502 F. Supp. 543, 556-557 (S.D.N.Y. 1980) aff'd 687 F.2d 604 (2d Cir. 1982).

   That being said, Ms. Boykins has set forth a claim that Ms. Kleo, and thus the CDC, violated procedural due process by not meeting Goldberg's first requirement: that the decision states the "reasons" for the determination reached. See 397 U.S. at 271. True, Ms. Kleo found that terminating Ms. Boykins' Section 8 subsidy was warranted because the CDC "did demonstrate by a preponderance of the evidence" that Ms. Boykins violated "Section 8 rules and regulations." But Ms. Kleo did not explain why she believed the CDC met its evidentiary burden, or how it accomplished this task. Instead, Ms. Kleo merely recited the proper evidentiary formula ("preponderance of the evidence") and then, in a wholly conclusory fashion, found that "Ms. Boykins did in fact violate Section 8 rules and regulations," without actually any explanation whatsoever. Thus, Ms. Boykins' due

process claim concerning the vagueness of Ms. Kleo's decision survives a motion to dismiss.

In this regard, the Court finds Moore v. Ross highly instructive. There, the Second Circuit held that "cursory" decisions complied with due process, although "it would have been far better if the [decision] had given a fuller explanation of [its] grounds." 687 F.2d at 610. But the "cursory" opinions that Moore affirmed, with some hesitation, provided much more detail than Ms. Kleo's did here. Specifically, those decisions set forth the following:

> The credible evidence establishes that claimant was late on December 19, 1977 after receiving warnings about latenesses. Although he knew that he would be late on that day he failed to notify his employer. In view of the contradictions in claimant's statements, we reject his contention that he was late due to a compelling reason. We conclude that the claimant lost his employment through misconduct in connection therewith.

and

> The evidence establishes that claimant did not call his employer within one hour prior to his starting time, as the employer required. Significantly, claimant had been placed on final warning and he knew that his job was in jeopardy if he continued to violate the attendance rules. We reject claimant's contention that he notified a co-worker of his absence, in view of the co-worker's testimony to the contrary. Under the circumstances we conclude that claimant

> lost his employment through misconduct in
> connection therewith.

See 687 F.2d at 606.

These decisions are hardly detailed. Indeed, they spend no more than a few sentences explaining their reasons. But, in contrast to Ms. Kleo's decision, they actually set forth the factual basis for what they held. Ms. Kleo's decision did not even attempt to do so. Consequently, Ms. Boykins' due process claim deriving from the vagueness of Ms. Kleo's decision (the "Second Claim for Relief") survives Defendants' motion to dismiss.

C.    Preponderance of the Evidence Claim

Ms. Boykins also argues that Ms. Kleo's decision violated her due process rights because the CDC failed to prove the alleged violations by a preponderance of the evidence. Specifically, Ms. Boykins contends that Ms. Kleo did not give sufficient weight to the evidence she presented at the hearing, and instead relied upon a nonexistent HUD regulation which, purportedly, prohibits non-residents from receiving mail at a subsidized unit. (Pl. Opp. Br. at 4.)

The Second Circuit has not yet articulated a clear standard for the level of deference a district court must show an agency's factfinding when terminating public housing assistance. But, in their briefs, both Ms. Boykins and

Defendants ask the Court to adopt the Fourth Circuit's standard, as set forth in Clark v. Alexander, 85 F.3d 146, 151-52 (4th Cir. 1996). See Def. Br. at 13-14; Pl. Opp. Br. at 10-11. There, the Fourth Circuit held that "the level of deference shown to the factfindings of a hearing officer is not absolute but it is significant." 85 F.3d at 151. To that end, "the reviewing court must be satisfied that the hearing officer's conclusions are supported by substantial evidence." Id. at 152. "Substantial evidence," in turn, is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The Court agrees with the parties that this standard makes sense.

Applying this standard, the Court finds that Ms. Boykins fails to state a "preponderance of the evidence" Goldberg claim. At the hearing, the CDC presented considerable evidence that Ms. Boykins' son, Carlton, did, in fact, live in the subsidized unit. To begin with, the CDC established that Mr. Boykins consistently and publicly represented the subsidized unit as his address, including for purposes of his car registration and tax returns. In addition, through Connie Bruno's Affidavit, the CDC introduced Suffolk County Police

14

Officer Paul Allincio's investigative findings that Mr. Boykins lived in the unit.

On the flip side, Ms. Boykins and Mr. Boykins both testified Mr. Boykins did not live in the subsidized unit, but in another apartment that Mr. Boykins leased from his godmother, Bonita Alonzo. And, after the hearing, Ms. Boykins submitted a brief affidavit from Ms. Alonzo, supporting her claim that Mr. Boykins had rented an apartment from Ms. Alonzo for the past seven years.[4] But, aside from this affidavit, Ms. Boykins did not otherwise evidence that Mr. Boykins actually lived in his godmother's apartment. For example, Ms. Boykins did not submit old rent checks, or any photographic or documentary evidence attesting to Mr. Boykins' proper residence.

The Court must afford Ms. Kleo's findings significant discretion. Clark, 85 F.3d at 151. Applying that standard, the Court finds that Ms. Kleo was free to credit Mr. Boykins' own representations, on public documents, that he lived in his mother's subsidized unit. See generally Oliveira v. Holder, 330 Fed. Appx. 209, 211 (2d Cir. 2009) (in immigration case, the petitioner's "correct address" was the address listed on

---

[4] The hearing transcript identifies Carlton's godmother/landlord as "Anita Alandro," while her affidavit identifies herself as "Bonita Alonzo." The Court presumes that the reporter who transcribed the hearing misheard the name when spoken.

"federal income tax returns," notwithstanding petitioner's claim that he lived elsewhere); United States v. Leining, 89-CR-10063, 1990 WL 11605, at *2 (D. Kan. 1990) (defendant's "legal address" was address used on tax return). Likewise, Ms. Kleo was free to not credit Ms. and Mr. Boykins' testimony, or Ms. Alonzo's affidavit. In this regard, the Court notes that it should defer to administrative "credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." Xiu Xia Lin v. Mukasey, 534 F.3d 162, 167 (2d Cir. 2008) (immigration). Here, Ms. Boykins and Mr. Boykins obviously had a strong motive to lie at the hearing, and Ms. Alonzo, as Mr. Boykins' godmother, was arguably not a neutral witness. So, a reasonable factfinder could reject Mr. Boykins' claim that he listed his mother's unit as his mailing address because "there's a lot of woods around" his real home. (Def. Opp. Br., Ex. A at 12). Moreover, Ms. Boykins failed to produce any documentary evidence attesting to Mr. Boykins' rent payments to Ms. Alonzo, or to him actually residing at Ms. Alonzo's apartment. Conversely, Officer Allincio had no obvious reason to wrongly report that Mr. Boykins lived with his mother. Thus, affording Ms. Kleo's credibility determinations the requisite deference, the CDC adduced substantial evidence to support its allegation

that Mr. Boykins improperly lived in the subsidized unit. And, consequently, Ms. Boykins cannot state a due process claim predicated on the CDC's failure to prove its allegation by a preponderance of the evidence.

In this regard, the Court must also reject two of Ms. Boykins' other preponderance of the evidence arguments: (i) that Ms. Kleo improperly credited hearsay information originating from Officer Allincio; and (ii) that Ms. Kleo wrongly relied upon a nonexistent regulation in promulgating her decision. With respect to the hearsay claim, it is well-settled that agencies can use hearsay evidence to meet their evidentiary burden. See Richardson v. Perales, 402 U.S. 389, 402-406, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). And this principle holds true in public housing cases, so long as the tenant has the opportunity to cross examine the witnesses who provided the hearsay testimony. See Falkowski, 2009 WL 3174029, at *3, *12. Here, Officer Allincio did not attend the hearing, and could not be directly cross-examined. But the declarant, Connie Bruno, attended. And Ms. Boykins was perfectly free to call Ms. Bruno as a witness, and to question her about what, specifically, she learned from Officer Allincio. Thus, consistent with Goldberg, Ms. Boykins had an "opportunity to confront and cross examine

the witnesses" against her.   397 U.S. at 270.   Ms. Boykins'

failure to do so is her fault alone.

Similarly, Ms. Boykins' claim that Ms. Kleo improperly

based her decision upon a nonexistent HUD regulation cannot

stand.   At the hearing, Ms. Kleo did remark that an unidentified

law prevented someone from "us[ing] a subsidized units mailing

address if you are not living in the unit." (Def. Opp. Br. Ex.

A at 5.)   But Ms. Kleo then appeared to acknowledge that Ms.

Boykins was not charged with any such violation. (<u>Id.</u>)[5] And, in

any event, Ms. Kleo's decision did not allude to this alleged

law.   Instead, it referenced only the regulations at issue, 24

---

[5]   After Ms. Kleo referenced the alleged regulation, Ms. Kleo's
advocate, Steven Alpert, noted that "that's not the allegation,
the allegation here is that he is living there." (<u>Id.</u>)   Ms.
Kleo then responded "I'm just saying that you said . . .,"
referencing Mr. Alpert's earlier comment that no regulation
precluded a non-tenant from using a subsidized unit as a mailing
address. (<u>Id.</u>)   Mr. Alpert then finished the exchange by noting
"Alright, well, okay." (<u>Id.</u>)   Then, before closing the hearing,
Ms. Kleo instructed Mr. Boykins to "change [his] address
regardless of what [her] decision is" and to "get proof that
[he] have been paying rent . . . and living at this 55
Northville for all this time." (<u>Id.</u> at 13.)   Thus, in context,
it appears that, although Mr. Alpert and Ms. Kleo disputed the
existence of such a regulation, they both conceded that no such
regulation was relevant to the proceeding against Ms. Boykins.
And Ms. Kleo further appeared to acknowledge that, if Mr.
Boykins showed that he had "been paying rent . . . and living"
at another address, she would find for Ms. Boykins, despite Mr.
Boykins use of the subsidized unit as a mailing address.

C.F.R. §§ 982.551, 982.552, neither of which prohibit a non-tenant from using a subsidized unit as a mailing address. So, even if Ms. Kleo was mistaken about the existence of such a regulation, her mistaken belief evidently did not affect her decision.[6]

It follows then that Ms. Boykins' preponderance of the evidence claims (the Third, Fourth, and Eighth Claims for Relief) must be DISMISSED.

III. Qualified Immunity

In their motion to dismiss, Defendants argue that, even if Ms. Boykins might state a claim against the CDC, the Amended Complaint should be dismissed against Ms. Hammons and Ms. Bruno, because they are entitled to qualified immunity. In her opposition papers, Ms. Boykins does not challenge Defendants' qualified immunity arguments. Thus, she has abandoned her claims against Ms. Hammons and Ms. Bruno. See

---

[6] Ms. Boykins also alleges that Ms. Kleo's reference to a non-existent regulation disqualified her as an impartial hearing officer. (Am. Compl. ¶ 63.) This allegation is ignored, and thus abandoned, in response to Defendants' motion to dismiss. See Brandon v. City of New York, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases). In any event, it fails to state a claim. The fact that Ms. Kleo might have been mistaken about a law does not plausibly suggest bias. Moreover, Ms. Kleo's decision did not reference this purported law, and instead applied only the regulations relevant to the charges against Ms. Boykins. (Am. Compl. Ex. F.)

<u>Brandon v. City of New York</u>, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases); <u>Weise v. Casper</u>, 05-CV-2355, 2010 WL 3529546, at *2 (D. Colo. Sep. 2, 2010) (applying abandonment doctrine to failure to contest qualified immunity doctrine). In any event, these claims fail on their merits. The only allegation against Ms. Hammons concerns her failure to provide a sufficiently specific pre-termination notice. But Ms. Boykins alleges no facts to suggest that Ms. Hammons acted with a mental state worse than negligence. Thus, Ms. Boykins fails to plead a due process claim against Ms. Hammons. <u>See</u> <u>Dodd v. City of Norwich</u>, 827 F.2d 1, 3 (2d Cir. 1987) ("[T]o establish a violation of the due process clause [giving rise to § 1983 liability,] a plaintiff must prove that defendant 'deprived' him of life, liberty or property, a concept clearly satisfied by intentional conduct, but clearly not satisfied by conduct that is merely negligent."). And Ms. Boykins pleads no misconduct by Ms. Bruno at all. Instead, Ms. Boykins alleges only that Ms. Bruno signed an affidavit that contained entirely truthful information, such as that Ms. Boykins received a Section 8 subsidy, and that Officer Allincio had conducted an investigation and found that Mr. Boykins resided with her. Consequently, the claims against Ms. Hammons and Ms. Bruno are DISMISSED.

IV.  Claims Against Ms. Kleo

        As noted earlier, the Complaint and Amended Complaint name Ms. Kleo as a Defendant.  But, although Ms. Boykins commenced this action back in August 2010, there is no evidence that she ever served Ms. Kleo with a Summons and Complaint, or the Amended Complaint.  Consequently, the Court hereby ORDERS Ms. Boykins to SHOW CAUSE why this action should not be dismissed against Ms. Kleo.  See FED. R. CIV. P. 4(m).  Ms. Boykins has twenty (20) days from the date of this Order to respond.

CONCLUSION

        Defendants' motion to DISMISS IS GRANTED IN PART AND DENIED IN PART.  All claims against Ms. Hammons and Ms. Bruno are DISMISSED.  The Third, Fourth, and Eighth Claims for Relief are DISMISSED.  Because the Fifth, Sixth, and Ninth Claims for Relief were previously dismissed (Docket No. 30), the only claims still pending are the First and Second Claims for Relief, and the duplicative Seventh and Tenth Claims for Relief.

Ms. Boykins has twenty (20) days from the date of this Order to Show Cause why the action should not be dismissed against Defendant Kelly Kleo for failure to prosecute.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:      March __21__, 2011
            Central Islip, New York